**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BEVERLY MILLER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **ANTHONY J. PRINCIPI, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS** | ) | **No. 04-2583 Ma/V** |
| **Defendant.** | ) | |

**ORDER ON PENDING MOTIONS**

Plaintiff Beverly Miller ("Miller") brings employment discrimination claims under Section 501 of the Rehabilitation Act of 1973, 28 U.S.C. § 791 et seq.[1] She alleges disability, age, and race discrimination. Defendant Anthony J. Principi, Secretary of the Department of Veterans Affairs (the "VA") filed a motion to dismiss and/or for summary judgment on March 24, 2006, to which Miller responded on April 7, 2006. The VA filed a motion for judgment as a matter of law pursuant to Rule 16(c) on June 21, 2006. For the following reasons, the VA's motion to dismiss and/or for summary judgment is GRANTED, and the VA's motion for judgment as matter of law pursuant to Rule 16(c) is DENIED, as moot.

[1] Miller also brings claims for disparate treatment based on race and age. She does not cite the legal basis for those claims. The court has assumed that the race and age claims are brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000 et seq ("Title VII") and the Age Discrimination in Employment Act ("ADEA"),29 U.S.C. § 621 et seq.

## I. Jurisdiction

These claims are based on the Rehabilitation Act, Title VII, and the ADEA. Therefore, this court has jurisdiction under 28 U.S.C. § 1331.

## II. Background

The following facts are undisputed. Miller began her employment with the VA as a nurse in 1980. In 2002, she was employed as a nurse practitioner, Level 4, earning approximately $96,000 per year. (SOMF ¶ 1.) In 1998, Miller suffered an on-the-job injury, which was later diagnosed as bilateral carpal tunnel syndrome of the left wrist. She filed a claim with the United States Department of Labor, Office of Workers' Compensation ("OWCP"), and her claim was accepted by the OWCP. (SOMF ¶ 2.)

Accommodation of Miller's physical limitations became an issue in January 2002, when she returned from a two-month absence after leg surgery. Miller worked as a nurse practitioner in the Orange Clinic Ambulatory Care Unit of the Veterans Medical Center in Memphis, Tennessee. She was responsible for the examination of patients, which could include a general medical examination (weight, vital signs, and using the otoscope[2], ophthalmoscope,

---

[2] An otoscope is a medical instrument consisting of a magnifying lens and light used to examine the external ear (the auditory meatus and especially the tympanic membrane).

stethoscope and hammer), cardiac examination, peripheral examination, and neurological examination. (SOMF ¶ 3)

After her return, Miller had difficulty entering data into the computer, an important job function. (SOMF ¶ 4.) Miller's physician limited her to typing a maximum of 5 hours a day and a maximum of 10 minutes at one time. Miller requested that a nursing assistant be assigned to perform all of her computer entry tasks. Instead, the VA provided Miller with Dragon Naturally Speaking ("Dragon"), a voice recognition program that was intended to eliminate the need to type patient data into the computer. Although Miller was trained on Dragon, it became clear that the program was not compatible with her speech pattern or the VA's computer patient record system. (SOMF ¶ 7.)

Miller also gave management a statement from her physician that she should lift no more than ten pounds and could not stand for prolonged periods. In response, the VA reduced Miller's workload from ten to six patients a day. (SOMF ¶ 5-6.) In June 2002, Miller underwent a Functional Capacity Examination ("FCE") at the Campbell Clinic. Based on the FCE results, Miller's physician informed the VA that her condition permanently restricted her to five hours of typing a day. She was given a permanent partial disability rating of 10% to the upper left extremity and 5% to the upper right extremity. As an accommodation, Miller was reassigned to a position in the Compensation and Pension Examination Unit

("CMP"), which required less typing. (SOMF ¶ 8.)

In January 2003, Miller returned from a second surgery. Because of her newly acquired physical limitations, she could no longer perform the work in the CMP. In April 2003, Miller was reassigned to Infection Control, as a further accommodation. Miller continues to work in Infection Control today.

Miller has never been paid less than her full salary, did not lose any wages between January and September 2002, and has never received any disciplinary action. Her proficiency evaluation for 2002 was very favorable, better than in previous years. (SOMF ¶ 10)

Miller filed a formal complaint of discrimination with the Equal Employment Opportunity Comission on July 2, 2002, Case No. 200L-0614-2002103252.

**III. Standard for Dismissal Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for failure to state a claim upon which relief can be granted. Motions to dismiss under Fed.R.Civ.P. 12(b)(6) are designed to test "whether a cognizable claim has been pleaded in the complaint." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when no set of facts exists which would entitle the plaintiff to recover. Hammond v. Baldwin, 866 F.2d 172, 175 (6th Cir.1989). Essentially, it allows the court to dismiss meritless

cases which would waste judicial resources and result in unnecessary discovery. See, e.g., Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The United States Supreme Court has held that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts entitling her to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus,"[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim." Id. at 47. "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." Wittstock v. Mark a Van Sile, Inc., 330 F.3d 889, 902 (6th Cir. 2003).

**IV. Summary Judgment Standard**

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be

read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet its burden, however, by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See Interroyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989); Street, 886 F.2d at 1479-80. Parties have the duty to point out specific

evidence in the record that would be sufficient to justify a jury decision in their favor. Id.

**V. Age and Race Claims**

The VA argues that, because Miller has not exhausted her administrative remedies, the court lacks subject matter jurisdiction of her claims of age and race discrimination. Under Title VII, a plaintiff must exhaust her administrative remedies before filing suit. See Section 717 of Title VII, 42 U.S.C. § 2000e-16(c). The Equal Employment Opportunity Commission ("EEOC") has promulgated regulations governing the filing and processing of administrative complaints of discrimination by federal employees. Under the ADEA, a federal employee may use the EEOC administrative process before filing a civil action in the United States district court or file a suit in the district court in the first instance after giving the EEOC thirty days notice of intent to file. See 29 U.S.C. § 633a(b)-(d).

Under EEOC regulations, Miller was required to: (1) consult an agency EEO counselor within 45 calendar days of the date on which she would reasonably have suspected discrimination by the agency, 29 C.F.R. § 1614.105(a)(1); (2) initiate a formal complaint of discrimination within 15 days of receipt of the notice of the final interview with the EEO Counselor, 29 C.F.R. § 1614.106(b); and (3) file suit within 90 days of receipt of the final agency decision, 29 C.F.R. § 1614.407(a)(b).

Miller contacted an EEO counselor on May 16, 2002, and filed a formal complaint of discrimination, Case No. number 200L-0614-2002103252, on July 2, 2002. She alleged discrimination based on race, age, and disability. On August 14, 2002, the VA Office of Resolution Management sent a letter (the "Agency Decision Letter") to Miller dismissing her claim because it did not meet procedural requirements. The Agency Decision Letter stated, "This constitutes the **FINAL AGENCY DECISION** on your discrimination complaint." (emphasis in original). It described Miller's appeal rights, including an appeal to the Equal Employment Opportunity Commission, Office of Federal Operations ("EEOC-OFO") or a civil action in the appropriate United States District Court and noted that a civil action must be filed within ninety (90) days of receipt of the letter. (SOMF, Administrative History, ¶ 12.). The administrative record establishes that Miller did not appeal the Final Agency Decision to the EEOC-OFO, file a civil action within ninety days of receipt of the Final Agency Decision, or file the notice required under the ADEA pursuant to section 633a.

Miller does not object to the dismissal of her race and age claims. Because the record establishes that Miller did not timely file this action or otherwise exhaust her administrative remedies, the VA's motion for summary judgment on Miller's age and race claims is GRANTED.

**VI. Claims under the Rehabilitation Act**

To establish a prima facie claim under the Rehabilitation Act, Miller must show that: 1) she is an individual with a disability; 2) she is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) she has suffered adverse employment action solely by reason of her handicap. Monette v. Electronic Data Systems Corp., 90 F.3d 1173 (6th Cir. 1996).

The standard under the Rehabilitation Act mirrors that under the American with Disabilities Act of 1990 (the "ADA"), 29 C.F.R. § 1614.203(b). The ADA defines a disability as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. §12102(2).

The ADA does not define the terms "physical or mental impairment", "substantially limits", or "major life activities". The EEOC has promulgated regulations which define those terms as follows:

> Physical or mental impairment: (1) any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine; or (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(1).

> Substantially limits: (i)Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

> Major Life Activity means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

29 C.F.R. § 1630.(2)(i).

In determining whether a person is substantially limited in a major life activity the following factors should be considered: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

Miller contends that she is disabled because she has physical impairments that substantially limit major life activities. (Resp to Mtn. for Summ J. at 7.) She argues that her physical limitations prohibit her from performing daily activities and the routine duties of a nurse practitioner. (Resp. to Mtn. for Summ. J. at 7.)

During her deposition, Miller's described the following physical limitations:

> A. Well, just as a for instance, the door that I have to go into is under negative pressure, and I can't open that door because of my arms and hands.
> Q. So how do you get in every day?
> A. I have to call them and they come and open the door for me.

> Q. Do you know why the door has the negative pressure?
> A. It's a research area, and so it has to be under the negative pressure.
> Q. Other than the problem with the door, is there anything else that is outside your medical restriction that you have to do?
> A. I can't lift. Like if, when I do like the hospital-wide-services, I can't lift the materials that we hand out to them. And I can't really push the cart. So somebody has to push that cart for me. I'm not supposed to pick up anything over three pounds.
> Q. Now, is there someone who lifts the materials for you?
> A. Yes.
> Q. All right. And someone who pushes the cart for you?
> A. Yes.

(Miller Depo. p. 33-34).

The VA argues that the there is nothing in the record to indicate that, between January 2002 and September 2002, Miller was unable to perform major life activities. The VA cites Miller's July 18, 2003 Affidavit, which states that she could shampoo her hair twice a week, although it caused pain, and drive a vehicle for short distances. (Mtn. for Summ J. Exhibit 2., p. 12).

Miller testified that in January 2002: 1) she was in a great deal of pain; 2) she could not wear her rings because her hands would swell; 3) she could do little or nothing to assist patients physically; 4) it was very difficult to write; 5) she could only use the computer for limited periods of time; 6) she could not hold objects; and 7) she could not lift more than three pounds. (Miller Depo. pp. 136-37). Based on Miller's testimony, a reasonable jury could conclude that she was disabled.

The VA argues that, even if Miller establishes that she was

disabled within the meaning of the Rehabilitation Act, she cannot establish that she was "otherwise qualified" to perform the duties of a nurse practitioner with or without reasonable accommodation. The law does not require an employer to lower its standards or remove essential functions of the job. Jasany v. U.S.P.C. 755 F.2d 1244, 1250 (6th Cir. 1985). To establish that she was "otherwise qualified", Miller must show that she was meeting the employer's legitimate expectations and was performing to the employer's satisfaction. Monette, 90 F.3d 1173, 1183 (6th Cir. 1996).

Miller argues that she was "otherwise qualified." She contends that the essential job functions of a nurse practitioner included diagnosing medical conditions and developing plans of intervention in conjunction with the supervisory physician. Miller argues that she could perform those essential functions. (Resp. to Mtn. for Summ. J. at 10.)

Nurse practitioners in ambulatory care were expected to see ten patients a day. (Miller Depo. p. 73.) Under the restrictions initially given by her doctor, Miller could see only about five patients a day. VA files are paperless, making the input of patient data into computers a necessary part of her job. (Miller Depo. p. 35, 52-55.) Miller has acknowledged that she was unable to type the necessary data into the computer and that the Dragon voice-recognition software was not compatible with her speech patterns. Miller testified that she had difficulty using an otoscope and could

not lift things overhead, help patients onto the examination table or into wheelchairs, or check pulses. (Miller Depo. p. 85-87).

Under 42 U.S.C. § 12112(b)(5)(A), an employer has discriminated against a disabled person when the employer does not reasonably accommodate the known physical limitations of an otherwise qualified employee, unless the employer can demonstrate that the proposed accommodation would be an undue hardship on the employer. Miller contends that, if the VA had accommodated her by reducing her workload of patient visits and assigning a person who could help her enter patient information data into the computer, she would have been "otherwise qualified" for the position and met the employer's legitimate expectations. (Resp. to Mtn. for Summ. J. at 10.)

The undisputed material facts establish that the VA accommodated Miller by providing her with Dragon and reducing her workload from ten to six patients. When that accommodation was insufficient, the VA transferred Miller to a different department. Miller was not "otherwise qualified" to be a nurse practitioner because she could not perform numerous essential functions, including: taking a patient's pulse, entering patient data into the VA computer system, using the otoscope, and assisting patients onto the examination table.

The VA medical center in Memphis is one of the largest veterans' hospitals in the country. Thousands of patients are seen

each year in ambulatory care alone. To accommodate Miller’s physical limitations, she admits that the VA would have had to hire a medical assistant to perform many of the essential job functions of a nurse practitioner. (Miller Depo. pp 36. 84-85.) Hiring a medical assistant would have put an unnecessary financial strain on the VA’s budget and raised issues under the Health Insurance Portability and Accountability Act and federal privacy rules.

Because no reasonable accommodation would have made Miller “otherwise qualified” for the position, Miller cannot establish a prima facie claim under the Rehabilitation Act. Therefore, the VA’s motion for summary judgment on Miller’s Rehabilitation Act claims is GRANTED.

**VII. Motion Pursuant to Rule 16(c)**

Because the VA’s motion for summary judgment is granted, the VA’s motion for judgment as a matter of law pursuant to Rule 16(c) is DENIED, as moot.

**VIII. Conclusion**

Because the court lacks jurisdiction over Miller’s age and race claims, the VA’s motion for summary judgment on those claims is GRANTED. Plaintiff has not established a prima facie claim of discrimination under the Rehabilitation Act. Therefore, the VA’s motion for summary judgment on that claim is GRANTED. The VA’s motion pursuant to Rule 16(c) is DENIED as moot.

So ORDERED this 2nd day of August 2006.

s/ SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE